UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON C. SHULTZ,

        Plaintiff,

  -v-                                        5:17-CV-212

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC    KENNETH R. HILLER, ESQ.
Attorneys for Plaintiff
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

OFFICE OF REGIONAL GENERAL COUNSEL    JOHANNY SANTANA, ESQ.
   SOCIAL SECURITY ADMINISTRATION        Special Ass't United States Attorney
   REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

---

[1] On March 6, 2018, the U.S. Government Accountability Office reported that Nancy A. Berryhill's continued service as Acting Commissioner of the Social Security Administration violated the Federal Vacancies Reform Act of 1998, 5 U.S.C. § 3349(b), as of November 17, 2017. Defendant Berryhill currently serves as the Deputy Commissioner of Operations. See, e.g., Tooker v. Berryhill, 2018 WL 3155836 n.1 (June 28, 2018).

**MEMORANDUM–DECISION and ORDER**

**I. INTRODUCTION**

Plaintiff Jason C. Shultz ("Shultz" or "plaintiff"), brings this action seeking review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision denying his application for Disability Insurance Benefits ("DIB"). The parties have filed their briefs as well as the Administrative Record on Appeal and the motions will be considered on the basis of these submissions without oral argument.[2]

**II. BACKGROUND**

Shultz initially filed an application for Disability Insurance Benefits alleging that his various physical and mental conditions rendered him disabled beginning on February 14, 2008. Plaintiff's claim was initially denied on August 7, 2013, and denied again after reconsideration on October 31, 2013.

At Shultz's request, a video hearing was held before Administrative Law Judge ("ALJ") Edgardo Rodriguez-Quilichini on August 7, 2015. Plaintiff, represented by counsel, appeared and testified. Thereafter, the ALJ issued a written decision denying plaintiff's application for benefits, which became the final decision of the defendant Commissioner of Social Security when the Appeals Council denied his request for review. R. at 4-7.[3]

**III. DISCUSSION**

    **A. Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether

---

[2] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[3] Citations to "R." refer to the administrative transcript.

the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments

meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. Shultz's Appeal[4]

Shultz contends remand is necessary because the ALJ dismissed his claim without

---

[4] The administrative proceedings in this case took place in Florida, where Shultz was then a resident. Subsequent to the Commissioner's final decision on his disability claim, plaintiff moved to New York and secured new counsel for this appeal.

first developing the administrative record. In the alternative, plaintiff argues the ALJ failed to consider whether his DIB application might qualify as one for SSI instead.

**1. The Administrative Record**

Shultz contends the ALJ failed to assist him in obtaining certain medical records and/or failed to give his attorney additional time to attempt secure them on his own. The Commissioner responds that the ALJ made reasonable efforts to obtain all of the records identified by plaintiff in connection with his benefits claim.

As courts have repeatedly noted, "Social Security proceedings are inquisitorial rather than adversarial." Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016) (quoting Sims v. Apfel, 530 U.S. 103, 110-11 (2000)). "Consequently, 'the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" Id. (quoting Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009)). This duty to develop the record applies "even where the claimant has legal counsel." Id. at 261-62.

But the scope of this duty is not without limit. See, e.g., Brown v. Comm'r of Soc. Sec., 709 F. Supp. 2d 248, 256-57 (S.D.N.Y. 2010). To be sure, the applicable regulations require the Commissioner to make "every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence." 20 C.F.R. § 404.1512(b)(1). And as the regulations explain, "[e]very reasonable effort means that we will make an initial request for evidence from your medical source . . . [and] if the evidence has not been received, we will make one follow-up request." § 404.1512(b)(1)(i).

The relevant time period in Shultz's case for medical records falls between February

14, 2008, the alleged onset date, and December 31, 2009, the date plaintiff was "last insured" for purposes of his DIB claim. Mauro v. Berryhill, 270 F. supp. 3d 754, 761 (S.D.N.Y. 2017) (discussing how the "date last insured" requirement functions and observing that a claimant is not entitled to benefits unless he or she became disabled prior to this date).

In his initial application for benefits, Shultz made the agency aware of a number of different providers in possession of medical evidence concerning his ailments. R. at 333-35, 367, 382-83, 412, 420. Of these, plaintiff identified only one provider—Jackson Healthcare Systems—as having treated him during the relevant time period; that is, before his "date last insured." R. at 335 (setting forth October 2008 to May 2010 time period).

Contrary to Shultz's argument, the Commissioner actually sought and received records from this provider. R. at 417-18, 455-467. Notably, however, the records provided to the agency indicate plaintiff's "initial clinic visit" to this provider occurred on January 5, 2010, outside the relevant time period. R. at 464.

As the Commissioner points out, the claimant also has a duty is to facilitate the disability review process by informing the agency "about or submit[ting] all evidence known to [them] that relates to whether or not [they] are blind or disabled." 20 C.F.R. § 404.1512(a)(1). Given that the only providers plaintiff actually identified for the agency were those who provided medical treatment beyond his "date last insured," the ALJ's options going forward were limited.

In fact, in his written decision the ALJ set forth in detail the hurdles to meaningful progress in this case. R. at 144-45. For instance, the ALJ noted Shultz had been continuously represented by Bill B. Berke, the same attorney, since the date of his initial application for benefits on July 8, 2013. The ALJ further noted that this same attorney had

been on notice that there was no medical evidence in the record from any time prior to plaintiff's "date last insured" as early as October 31, 2013, the date on which the agency denied plaintiff's request for reconsideration of his benefits application.

Yet even though Shultz's hearing before the ALJ did not take place until nearly two years later (on August 7, 2015), neither plaintiff nor his attorney had made any apparent effort in the interim to identify or provide medical records dating from the all-important time period before plaintiff's "date last insured."  And when pressed about this long-running failure by the ALJ at the hearing, plaintiff's counsel simply asked for even more time.  R. at 154.

The ALJ acted reasonably in rejecting this request.  As the ALJ observed in his written decision, "the claimant had a substantial amount of time to develop the record or submit medical evidence prior to the date when the claimant's insured status expired" but "utterly failed to do so" even though he has been afforded "over two years" in which to accomplish this task.  R. at 144.  Further, as the Commissioner points out, the post-hearing evidence Shultz actually did submit to the agency contained no indication that evidence from the relevant time period might even exist.  Def.'s Mem. at 7.[5]

On appeal, Shultz nevertheless contends the ALJ should have somehow subpoenaed "the records."  Pl.'s Mem. at 14.  But even now, plaintiff has not produced any evidence from the relevant time period or given an indication of where it might be found.[6]  Upon review of

---

[5] Pagination corresponds with CM/ECF.

[6] Instead, plaintiff's brief contains two passing references to the possible existence of evidence from the relevant time period; i.e., before plaintiff's date last insured: (1) the January 5, 2010 treatment note from Jackson Memorial Hospital, which notes plaintiff self-reported neuropathic pain beginning "1-1/2 years ago" and states that plaintiff had been diagnosed with diabetes five years before; and (2) an October 27, 2010 treatment note from Florida Pain Solutions in which Dr. Fiaz Jaleel, one of plaintiff's pain management doctors, mentioned that plaintiff's "neuropathy" had begun two years prior.  Pl.'s Mem. at 12-13.

- 8 -

the unusual circumstances presented in this case, plaintiff's request for remand for additional development of the record will not be granted.

### 2. SSI Application

As an alternative ground for remand, Shultz contends the ALJ failed to consider his benefits claim under the standards for SSI as well as DIB. According to plaintiff, prior to the hearing his attorney "filed a brief with the Commissioner" making this request for dual, or alternative, consideration. Pl.'s Mem. at 14.

This argument is also rejected. The ALJ observed in his written decision that Shultz's attorney first made this request in a pre-hearing brief "only a few days" before the hearing, which had been scheduled for two years. R. at 144. As the ALJ pointed out in his written decision and as the Commissioner now emphasizes in opposition, (1) plaintiff affirmatively stated that he did *not* want to apply for SSI benefits in his initial application; (2) in the years in which his DIB application remained pending, neither plaintiff nor his attorney made any efforts to supplement it with the sort of additional information required to substantiate a request for SSI; and (3) plaintiff never completed a formal agency application for SSI or went through the various steps of the administrative process required for seeking SSI benefits. In sum, plaintiff has offered no reason why the ALJ's refusal to consider his DIB claim as one for SSI warrants remand.

## IV. CONCLUSION

The ALJ applied the appropriate legal standards and supported his decision with substantial evidence in the record.

Therefore, it is

ORDERED that

- 9 -

1. Shultz's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Shultz's complaint is DISMISSED.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.


Dated: July 20, 2018
       Utica, New York.

_____
United States District Judge